411 So.2d 987 (1982)
Eileen MARTIN, Appellant,
v.
STATE of Florida, Appellee.
No. 80-2001.
District Court of Appeal of Florida, Fourth District.
March 31, 1982.
*988 Richard L. Jorandby, Public Defender, and Anthony Calvello, Asst. Public Defender, West Palm Beach, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Robert L. Bogen, Asst. Atty. Gen., West Palm Beach, for appellee.
PER CURIAM.
Defendant, Eileen Martin, complains of improper impeachment during cross-examination. We agree and hold that the combination of prosecutorial and judicial error requires a reversal of her conviction and sentence.
Defendant was charged with sale of valium to Ronald Markowski, an undercover Boca Raton policeman. Ms. Martin testified in her own defense. During direct examination, defense counsel carefully elicited that she had been convicted of a crime on two prior occasions. Counsel stopped with that and moved on to other areas of inquiry. On cross-examination the following colloquy ensued between the prosecuting attorney and the defendant:
Q In essence, your testimony was that Officer Markowski wanted to frame you, is that right?
A Yes.
Q Why would Officer Markowski want to frame you?
A Why would he?
Q Yes.
A Well, for one thing, to my belief, they think that I was the person that was giving these people the drugs. That is why.
Q Why would they think 
A That is why they came to me, called me, followed me, stopped me all hours of the night, went to my jobs where I worked. They were constantly trying to see if they could get anything from me, and they never did.
Q Well, they never did?
A No.
Q At anytime?
A I never sold Ron  whatever his name is  anything.
Q Now, you have been convicted of two crimes, have you not?
A Yes, I have.
Q And what was one of those crimes?
Defense counsel objected and the jury was excused. The prosecutor then argued that the defendant's response, "They were constantly trying to see if they could get anything from me, and they never did," opened the door to further inquiry. The trial court did not rule on this assertion because of its view of the applicable law: "... I know you can't impeach just on the *989 basis of the prior crime. But you do have the right to ask if she has ever sold drugs before. I think you can ask that, if she elects to take the stand." (Tr. 96). The court elaborated: "I think you have the right to pursue it. It is within two years of this transaction. I may be wrong but I think on the credibility, you have the right to explore it. I don't think she is immunized with regard to a similar crime, if she elects to take the stand." (Tr. 97). Thus, the trial court overruled a defense objection and a motion for mistrial and permitted the prosecutor to ask the defendant if she had ever sold drugs before. She responded, "yes."
This line of questioning was underscored during final argument when the prosecuting attorney stated:
"Eileen Martin did the same thing. This was absolutely crucial, she lied to you on the witness stand and she was caught. I asked her essentially, yesterday, "Why would the police frame you?" That was the essence of my question. "What is the reason?" She gave a long answer, and during the course of the answer was, she said, "I never sold drugs." And I said, "Wait a minute, you never sold drugs to anybody?" She changed and caught herself  So, I asked, "Have you ever sold to anyone?" "Not to Ron." She changed her story. And after you came back, I asked the question of the Defendant, "Have you ever sold drugs to anyone?" She said, "Yes." She changed her testimony. She lied right before you on the witness stand.
Unfortunately, the trial court was mistaken in its view of the law. Putting aside the "Williams Rule" which is now codified as Section 90.404(2)(a), Fla. Stat. (1981) and which is generally utilized in the state's case-in-chief, a prosecutor is not authorized to delve into a prior conviction simply because a defendant elects to take the witness stand in his own defense. This is true despite the proximity and similarity of the alleged subsequent offense to a prior conviction. The appropriate rule is found in Section 90.610, Florida Statutes (1979). It states:
(1) A party may attack the credibility of any witness, including an accused, by evidence that the witness has been convicted of a crime if the crime was punishable by death or imprisonment in excess of 1 year under the law under which he was convicted, or if the crime involved dishonesty or a false statement regardless of the punishment, with the following exceptions:
(a) Evidence of any such conviction is inadmissible in a civil trial if it is so remote in time as to have no bearing on the present character of the witness.
(b) Evidence of juvenile adjudications are inadmissible under this subsection.
(2) The pendency of an appeal or the granting of a pardon relating to such crime does not render evidence of the conviction from which the appeal was taken or for which the pardon was granted inadmissible. Evidence of the pendency of the appeal is admissible.
(3) Nothing in this section affects the admissibility of evidence under s. 90.404 or s. 90.608.
Cf. Davis v. State, 397 So.2d 1005 (Fla. 1st DCA 1981).
The avowed purpose for such questioning is to test the credibility of the witness. Thus, as happened in the case at bar, when a defendant admits to prior convictions and accurately states their number, the questioning should cease unless the defendant has opened the door to further inquiry. This, of course, was the prosecutor's contention here and since we are obliged to affirm the trial court if we can do so by any theory revealed by the record on appeal, Savage v. State, 156 So.2d 566 (Fla. 1st DCA), cert. denied, 158 So.2d 518 (Fla. 1963), we turn to the prosecutor's suggestion.
Essentially the prosecutor contended that the defendant opened the door to further inquiry when she stated, "They were constantly trying to see if they could get anything from me, and they never did." The prosecutor argued that the defendant's use of the plural form of the personal pronoun *990 "they" inferred activity by the police in general. Furthermore, he claimed that the adverb "never" suggested an all-inclusive time frame. Accordingly, he sought the court's permission to ask the defendant about a 1977 conviction for sale of PCP to a Boca Raton policeman. In fact, however, the prosecutor posed a broader question; he asked the defendant whether she had ever sold drugs before.
If the prosecutor's interpretation were correct, he would have been entitled to delve further. See, e.g., Davis v. State, 216 So.2d 87 (Fla. 2d DCA 1968); Dodson v. State, 356 So.2d 878 (Fla. 3d DCA), cert. denied, 360 So.2d 1248 (Fla. 1978). However, we cannot agree with his analysis. To start with, a defendant's statement cannot be evaluated in the abstract; it must be viewed in context. Here the record reflects that the prosecutor initiated the inquiry by asking for the defendant's view of Officer Markowski's motivation. In other words, the questioning centered on a single person. Yet in her response the defendant used the plural rather than the singular. Nonetheless, she immediately clarified her response by indicating that, "I never sold Ron  whatever his name is  anything." Her switch back to the singular is not dispositive, however, for the issue remains whether the defendant, by volunteering an overly-broad response, created a false impression in the minds of the jurors. Again, we turn to the record and note that the testimony of both Officer Markowski and the defendant established that he was the only police officer involved with the defendant. Moreover, Officer Markowski testified that he performed the various activities referred to in the defendant's answer, i.e., calling her, visiting her house and place of employment. Thus, it is reasonable to conclude that the defendant intended, and that the jury understood, her response to refer solely to Officer Markowski. Consequently, we hold that the defendant did not open the door to further inquiry regarding the specific nature of her prior convictions.
Finally, we are compelled to express our profound disapproval of what seems to have been a calculated effort to obtain a conviction based on guilt by association. At intervals throughout the brief cross-examination, the prosecutor asked the following questions:
Q And Paula [the defendant's sister] has been arrested by the Boca Raton Police, has she not? (Tr. 90).
Q Isn't it a fact Butch Briggs [the defendant's sister's boy friend] pled guilty September 18th, of that very crime? (Tr. 91).
Q Isn't it a fact at some point both of [the defendant's] ... brothers have been arrested numerous times? (Tr. 92).
Additionally, the prosecutor posed these questions:
Q So Daniel Garcia [the defendant's alibi witness] is married to someone else, isn't that right?
A Right.
Q And Mr. Garcia's wife doesn't really enjoy you going out with Mr. Garcia, does she? (Tr. 100).
The trial court properly sustained objections to all of these questions. They were irrelevant, inflammatory and prejudicial. They also represented a serious departure from acceptable prosecutorial conduct. In Salerno v. State, 347 So.2d 659, 661 (Fla. 4th DCA), cert. denied, 354 So.2d 985 (Fla. 1977), we noted the prosecutor's obligation to assure a defendant a fair trial. This was nothing more than a restatement of the well known principle that it is the duty of the prosecutor to seek justice, not merely to convict.[1] We recognize that the tensions of the adversary process and the heat of trial can test an attorney to the limit. Nonetheless, it is imperative that prosecuting attorneys be ever mindful of their awesome power and concomitant responsibility. The tactics and trial strategy of the prosecutor must reflect a scrupulous adherence to the highest standards of professional conduct.
*991 Accordingly, we reverse the defendant's conviction and sentence and remand the cause for new trial.
ANSTEAD, BERANEK and HURLEY, JJ., concur.
NOTES
[1] ABA Standards for Criminal Justice, 3-1.1(c), (2d ed. 1980).