500 So.2d 519 (1986)
Ruben LAWHORNE, Petitioner,
v.
STATE of Florida, Respondent.
No. 68365.
Supreme Court of Florida.
December 30, 1986.
Bennett H. Brummer, Public Defender, Eleventh Judicial Circuit, and Howard K. Blumberg, Asst. Public Defender, Miami, for petitioner.
Jim Smith, Atty. Gen., and Randi Klayman Lazarus and Debora J. Turner, Asst. Attys. Gen., Miami, for respondent.
BOYD, Justice.
This cause is before the Court on petition for review of the decision in Lawhorne v. State, 481 So.2d 19 (Fla. 3d DCA 1985). Review is sought on the ground that the *520 decision is in conflict with decisions of this Court or those of other district courts of appeal. We accepted jurisdiction on this basis. Art. V, § 3(b)(3), Fla. Const.
Petitioner was convicted in a jury trial of theft, trespassing, and resisting an officer without violence. At the trial, petitioner testified in his own behalf. On direct examination, defense counsel asked petitioner whether he had ever been convicted of a crime. Petitioner answered in the affirmative and his counsel then asked him how many times he had been convicted. Petitioner testified that he had been convicted six times. Defense counsel then asked petitioner whether he had gone to trial in the cases in which he had been convicted. At this point the prosecutor objected and the trial judge sustained the objection. Defense counsel argued that the question pertained to his client's credibility and was permissible. The trial judge directed that there would be no questioning by either side about any of the details or the nature of the previous convictions. On appeal the district court affirmed. The district court held that "the questions concerning the specifics of the defendant's six prior convictions were both untimely and improper." 481 So.2d at 20.
In reaching its conclusion that the questions were untimely, the district court cited to the decision in Ryan v. State, 457 So.2d 1084 (Fla. 4th DCA 1984), review denied, 462 So.2d 1108 (Fla. 1985), where the court said that such "anticipatory rehabilitation" "scramble[s] the orderly procedure laid out by the Florida Rules of Evidence [and] robs the defense counsel of an important strategic tool used in cross-examination, that of impeachment of a witness through the use of prior inconsistent statements." Id. at 1092. The court below also suggested that the testimony sought to be elicited might have been proper if the questioning "had come after the defendant had been impeached by the state with his prior convictions and defense counsel was seeking to rehabilitate him." Lawhorne v. State, 481 So.2d at 20. In this connection the court made reference to authorities holding that on redirect examination the party presenting a witness's testimony "may re-examine a witness about any matter brought out on cross-examination," Noeling v. State, 40 So.2d 120, 121 (Fla. 1949), and that a witness whose credibility is impeached by questioning as to criminal convictions may "state the nature of the crime and offer any relevant testimony that would eliminate any adverse implications." McArthur v. Cook, 99 So.2d 565, 567 (Fla. 1957). Based on these and other authorities, the district court observed:
Thus, when a criminal defendant is impeached by the disclosure on cross-examination of prior convictions, § 90.610, Fla. Stat. (1983), the defense counsel on redirect examination may attempt to rehabilitate the defendant by eliciting from the defendant the nature of the prior convictions.
Lawhorne v. State, 481 So.2d at 20.
In Bell v. State, 491 So.2d 537, 538 (Fla. 1986), this Court approved the use of "anticipatory rehabilitation" to "take the wind out of the sails" of an attack on credibility or to "soften the blow" of anticipated inquiries or revelations expected to be damaging to the credibility of the witness. Our opinion there implicitly rejected the reasoning expressed in Ryan v. State when we said:
The credibility of witnesses is always in issue. C. Ehrhardt, Florida Evidence § 401.1 (2d ed. 1984). We see no violation to the evidence code in allowing a party to mitigate the impact of inconsistent statements likely to be introduced, nor anything intrinsic to the jury's truth-finding function in an arbitrary requirement that opposing counsel's trial strategy may not be undercut. "Generally the rule against impeaching your own witness has not been interpreted to forbid counsel from asking his own witness on direct examination about prior inconsistent statements or prior convictions when done in an attempt to `soften the blow' or reduce the harmful consequences." Ehrhardt, § 608.2 (citations omitted).
*521 Bell v. State, 491 So.2d at 538. In Sloan v. State, 491 So.2d 276 (Fla. 1986), we held that the state on direct examination of its witness could reveal the witness's prior inconsistent statements and question the witness regarding the inconsistencies. "The fact that the inconsistencies in the prior testimony and the testimony at trial were revealed on direct examination rather than on cross did not alter the totality of the testimony heard by the jury." Id. at 277. In State v. Price, 491 So.2d 536 (Fla. 1986), we held that the presentation by the state of testimony of a witness explaining the reason for her prior inconsistent statements was improper not because elicited on direct examination but because the testimony brought out was improper and inadmissible on other grounds.
The only difference between Bell, Sloan, and Price on the one hand and the present case on the other is that in those cases the party seeking to deflate anticipated impeachment and lessen its effects by means of testimony presented on direct examination of its witness was the state while in this case the party seeking to utilize such a procedure was the defendant.
The issues before us are (1) whether the attempted questioning about whether the prior cases went to trial was proper rehabilitation and (2) whether such rehabilitation should be allowed on direct examination in anticipation of impeachment based on the prior convictions.
The second question is answered by our decisions in Bell and Sloan. Those decisions make clear that the party presenting testimony may not only bring out impeaching information on direct examination to steal the thunder of the impeachment it is anticipated the other side will elicit on cross, but may attempt to "reduce the harmful consequences" by explaining something about the nature or character of the damaging information  in other words, to rehabilitate the witness before he has been impeached. It is clear from the record in this case that the state fully intended to ask the witness about his prior convictions and had the documentation thereof in hand in case he should deny them. The state did not object to the defense bringing out the convictions but only to the question about whether the witness had been tried on the charges that led to those convictions. Consistent with Bell and Sloan we hold that a defendant testifying in his own behalf may not only testify about information comprising impeachment that the state would be permitted to elicit on cross-examination, but may also rehabilitate himself against such impeachment to the same extent as would be allowed on redirect following such impeachment by the state.
The other, or first question stated above, is more difficult. That question is whether the testimony sought to be presented, regardless of when it might be presented, was proper and permissible witness rehabilitation. The state argues that the question went beyond the scope of permissible rehabilitation and would have been improper even on redirect examination after impeachment. Petitioner argues that the trial court's ruling, that neither party would be allowed to present anything about the nature or circumstances of the prior convictions, erroneously prevented the presentation of permissible rehabilitation of the defendant's character and credibility at any time during the trial. The state argues that the attempted defense question sought to elicit irrelevant information that would not have been germane to any proper ground of rehabilitation, relying on McArthur v. Cook, 99 So.2d 565 (Fla. 1957).
In McArthur v. Cook, which was a civil case, the plaintiff testified in his own behalf. The defendant questioned him about whether he had ever been convicted of a crime. The trial court sustained the plaintiff's objection to the line of questioning, ruled that the questions and answers pertained to inadmissible matter, and ordered them stricken. On appeal this Court held that, based on a statutory rule of evidence, the fact of previous conviction on the part of the witness was admissible to affect his *522 credibility. We also commented on the witness's right to respond:
[T]he proper procedural approach is simply to ask the witness the straight-forward question as to whether he had ever been convicted of a crime. The inquiry must end at this point unless the witness denies that he has been convicted. In the event of such denial the adverse party may then in the presentation of his side of the case produce and file in evidence the record of any such conviction. If the witness admits prior conviction of a crime, the inquiry by his adversary may not be pursued to the point of naming the crime for which he was convicted. If the witness so desires he may of his own volition state the nature of the crime and offer any relevant testimony that would eliminate any adverse implications; for example, the fact that he had in the meantime been fully pardoned or that the crime was a minor one and occurred many years before.
Id. at 567 (emphasis supplied). Other cases also make clear that while the impeaching party may only inquire as to the existence of convictions and their number (or, if the matter be denied, may show the convictions by documentary evidence) the party presenting the testimony of the witness may delve into the nature or circumstances of the convictions for the purpose of rehabilitating the witness by attempting to diminish the effect of the disclosures. See, e.g., Johnson v. State, 380 So.2d 1024 (Fla. 1979); Mead v. State, 86 So.2d 773 (Fla. 1956); Noeling v. State, 40 So.2d 120 (Fla. 1949); Perry v. State, 146 Fla. 187, 200 So. 525 (1941); Madison v. State, 138 Fla. 467, 189 So. 832 (1939); Sneed v. State, 397 So.2d 931 (Fla. 5th DCA 1981); Leonard v. State, 386 So.2d 51 (Fla. 2d DCA 1980); Goodman v. State, 336 So.2d 1264 (Fla. 4th DCA 1976), cert. denied, 342 So.2d 1103 (Fla. 1977).
In Noeling v. State, 40 So.2d 120 (Fla. 1949), the state on cross-examination of the defendant asked him whether he had ever been convicted of a crime. He answered that he had been convicted of four misdemeanors. On redirect the defendant's attorney asked him what offenses his prior convictions were for. The state objected and was sustained. On appeal, this Court said:
The State now insists that since the State could not go into that matter likewise the appellant could not. This was error. The appellant should have been allowed to explain the nature of the crimes to show whether they materially affected his credibility. This is true because generally it is considered that a party may re-examine a witness on any matter brought out on cross-examination.
Id. at 121. Of course, as has already been discussed, in this case the impeaching material was itself brought out on direct rather than on cross-examination and the explanatory or rehabilitative matter, traditionally reserved for redirect examination, was sought to be presented on direct as well.
The state argues that the defendant's proposed rehabilitation was improper because it was not among the kinds of information approved for this purpose in McArthur v. Cook where that opinion said: "for example, the fact that he had in the meantime been fully pardoned or that the crime was a minor one and had occurred many years before." 99 So.2d at 567. This argument is not persuasive because McArthur v. Cook did not purport to provide an exhaustive list of the proper ways to rehabilitate, but only a few examples. Other cases provide other examples. In Perry v. State, the state, seeking to rehabilitate its discredited witness, asked him how much time he had served on his sentence and this Court held the question was proper, adding: "Where a witness has been impeached by proof of a prior conviction of crime, he may show the fact that he has served his time, or had been paroled or pardoned... . The State should have been permitted to ask the above question for the purpose of rehabilitating its witness... ." 200 So. at 527. In Barber v. State, 413 So.2d 482 (Fla. 2d DCA 1982), where the state impeached the defendant-witness by showing the existence of a verdict of guilt on a *523 previous charge, it was held that the defense could rehabilitate him by showing that no adjudication of guilt had been made. Moreover, if McArthur v. Cook was intended to be read as providing a restricted list of permissible bases for rehabilitation, it would be inaccurate because it is clear that the impeached witness may identify the crime or crimes of which he was convicted, see, e.g., Johnson v. State, regardless of whether they "had occurred many years before." McArthur v. Cook, 99 So.2d at 567.
The state has cited no authority, decisional or statutory, for the proposition that a party may not rehabilitate its witness by having the witness testify that his previous convictions were adjudicated upon pleas of guilty rather than upon trial verdicts. Nor have we found any such authority. Nor do we find any convincing reason put forth as to why there should be any such restriction.
We do not find that the proffered testimony was impermissible under the evidence code as an attempt to establish credibility on the ground of truthfulness on previous occasions. The testimony did not seek to call attention to past testimony or statements, but to past pleas of guilty. Obviously, the testimony was not offered as evidence of reputation for truthfulness under section 90.609, Florida Statutes (1983). Nor do the provisions on evidence of character or traits of character appear to pertain to the testimony here in question. §§ 90.404-.405, Fla. Stat. (1983). This was purely offered as rehabilitation following (or, in this case, in anticipation of) impeachment made pursuant to section 90.610(1), Florida Statutes (1983).
Rather than being offered to suggest to the jury that because the defendant was truthful on previous occasions his testimony should be regarded by the jury as credible, we believe the intended effect, and the effect that would have obtained had the testimony been admitted, was simply to ameliorate the highly negative effect the knowledge of the past convictions was likely to have on the jury's perception of the defendant in terms of both his character and his credibility. To the extent that impeachment is an attack on credibility, rehabilitation is an attempt to restore or salvage credibility. We do not believe that the attempt here was made by improper means.
It is true that by attempting to rehabilitate a witness by having him testify that past convictions were obtained by pleas of guilty, a party opens the door somewhat to allow the other party to question the witness about the reasons for pleading guilty. The difficulty this may present in certain cases is not a sufficient reason to restrict a genuine attempt at rehabilitation. The extent to which a party "opens the door" can be determined and controlled by the court to prevent the parties from wandering too far afield. See, e.g., Martin v. State, 411 So.2d 987 (Fla. 4th DCA 1982); Sneed v. State, 397 So.2d 931 (Fla. 5th DCA 1981); Leonard v. State, 386 So.2d 51 (Fla. 2d DCA 1980).
We conclude that the trial court erred in disallowing the question. Counsel for petitioner in their brief to this Court have stated that at trial petitioner's testimony admitted his guilt of the crime of theft. Therefore the error in disallowing the testimony, according to petitioner's own brief, harmfully affected only the convictions for trespassing and resisting arrest. As to those convictions the erroneous refusal to allow rehabilitative testimony by the accused was unquestionably harmful. We therefore approve that portion of the district court's decision that affirmed the theft conviction. We quash the remainder of the decision of the district court and direct that the convictions of trespassing and resisting arrest be reversed and remanded for a new trial.
It is so ordered.
McDONALD, C.J., and OVERTON, EHRLICH, SHAW and BARKETT, JJ., concur.
ADKINS, J., dissents.