608 So.2d 912 (1992)
Armando HIERRO, Appellant,
v.
The STATE of Florida, Appellee.
No. 90-2098.
District Court of Appeal of Florida, Third District.
November 17, 1992.
*913 Bennett H. Brummer, Public Defender, and John H. Lipinski, Special Asst. Public Defender, for appellant.
Robert A. Butterworth, Atty. Gen., and Consuelo Maingot, Asst. Atty. Gen., for appellee.
Before NESBITT, BASKIN and COPE, JJ.
COPE, Judge.
Armando Hierro appeals his convictions and sentences for theft of a motor vehicle, possession of burglary tools, petit theft, and resisting an officer without violence. We reverse.
First, the trial court erred by allowing the State to ask the defendant specifically what offenses he had previously been convicted of. We find that the defendant had not opened the door to such an inquiry by the State, and that the defendant's objections to such questions should have been sustained.
The defendant took the stand at trial. After defendant had admitted the number of prior convictions entered against him, defense counsel asked on redirect as follows:
Q.
.....
On those prior cases, Armando, did those convictions come about as a result of guilty verdict at jury trial, or did you enter guilty pleas to those cases?
A. No, I pled guilty.
Q. Why?
A. Because I feel guilty.
Q. Now did you have an opportunity in this case to enter a plea?
A. Yeah, he want to give me an offer.
Q. Okay. Now, don't talk about how much the offer was. Just answer one question. *914 Why did you elect not to take the offer?
A. Because I no guilty this time.
(Tr. 558-59).
On re-cross examination the State posed a series of questions in which the defendant was asked specifically what offenses he had previously been convicted of. The defendant's objections were overruled and defendant identified each crime of which he had previously been convicted.
In Lawhorne v. State, 500 So.2d 519 (Fla. 1986), the Florida Supreme Court held that after the State has impeached a defendant with prior convictions, defense counsel may permissibly bring out that the past convictions were obtained by pleas of guilty. Id. at 523. See generally C. Ehrhardt, Florida Evidence § 610.6 (1992); Fotopoulos v. State, 608 So.2d 784, 791 (Fla. 1992). The Lawhorne court said:
It is true that by attempting to rehabilitate a witness by having him testify that past convictions were obtained by pleas of guilty, a party opens the door somewhat to allow the other party to question the witness about the reasons for pleading guilty. .. . The extent to which a party "opens the door" can be determined and controlled by the court to prevent the parties from wandering too far afield.
500 So.2d at 523 (citations omitted; emphasis added).
Once the defendant had testified as he did, the State had the latitude to inquire about the reasons for defendant's pleading guilty. However, the State did not so inquire but instead simply asked the defendant to identify each of the crimes for which he had previously been found guilty. We see no basis on which the defendant opened the door to specific inquiry into the identity of the crimes for which he was previously convicted. This is not a case like Dodson v. State, 356 So.2d 878 (Fla. 3d DCA), cert. denied, 360 So.2d 1248 (Fla. 1978), in which defendant by his testimony misled the jury regarding the extent of his prior record, thus opening the door to the State to set the record straight on the nature of defendant's prior record.[1]
As we are unable to say that the error was harmless beyond a reasonable doubt, there must be a new trial.
Second, the trial court erred in giving its jury instruction for the offense of resisting an officer without violence.[2] The court used the standard jury instruction for this offense. The court gave the final sentence of the Standard Jury Instruction as follows: "The court further instructs you that the arrest and/or a detention of the defendant constitutes a lawful execution of a legal duty." (Tr. 726) (emphasis added). By stating that the arrest of this defendant constituted the lawful execution of a legal duty, the trial court in effect directed a verdict for the State on that point. See Tillman v. State, 600 So.2d 37 (Fla. 3d DCA 1992); Kirschenbaum v. State, 592 So.2d 1272 (Fla. 3d DCA 1992); Wimbley v. State, 567 So.2d 560, 561 (Fla. 4th DCA 1990); Dion v. State, 564 So.2d 618 (Fla. 4th DCA 1990); see also Jones v. State, 584 So.2d 190, 191 (Fla. 5th DCA 1991); Smith v. State, 399 So.2d 70, 71-72 (Fla. 5th DCA 1981).
As set forth in the Standard Jury Instructions, the final sentence reads: "The court further instructs you that (read duty being performed from charge) constitutes [execution of legal process] [lawful execution of a legal duty]." Fla. Std. Jury Instr. (Crim.) 196 (2d ed. reprinted 1992). The Standard Jury Instruction calls for the court to describe the "duty being performed" in generic terms without making specific reference to the defendant. That then leaves for the jury the factual determination whether the legal duty was performed with respect to this particular defendant. By instructing in this case that "the arrest and/or a detention of the defendant constitutes a lawful execution of a *915 legal duty" (Tr. 726) that issue was impermissibly taken from the jury.
Third, defendant was charged with possession of burglary tools in violation of section 810.06, Florida Statutes (1991). That statute provides, "[w]hoever has in his possession any tool, machine, or implement with intent to use the same ... to commit any burglary or trespass shall be guilty of a felony of the third degree... ." (Emphasis added). The statute thus requires proof "not merely that the accused intended to commit a burglary or trespass while those tools were in his possession, but that the accused actually intended to use those tools to perpetrate the crime." Thomas v. State, 531 So.2d 708, 709 (Fla. 1988) (emphasis added).
Here, the defendant was charged with stealing a car. He was also charged with possessing a screwdriver as a burglary tool. The screwdriver was found in the vehicle near the driver's seat. There was testimony at trial from which the jury could find that the screwdriver was used to break the steering column and/or start the vehicle.
While the testimony provided a basis on which the jury could find that the screwdriver was used to effectuate the theft of the vehicle, theft is not one of the offenses enumerated in section 810.06. In order for the State to establish that the screwdriver was a burglary tool, the State needed to adduce testimony showing that the defendant used, or actually intended to use, the screwdriver to commit a burglary or a trespass. Id.; see §§ 810.02, 810.06, 810.08, Fla. Stat. (1991). There was no evidence at trial from which the jury could find that the defendant used the screwdriver to gain entry to the vehicle, nor evidence from which the jury could determine that the defendant possessed the screwdriver with the intent to use it to gain entry to the vehicle. That being so, the conviction under section 810.06 must be reversed.
Fourth, defendant contends that the trial court erred with respect to the habitual offender sentence imposed on defendant.[3] The habitual offender statute enumerates the findings which must be made in order to establish that the defendant is an habitual offender. § 775.084(1)(a), Fla. Stat. (1991). Among these are the findings that "[t]he defendant has not received a pardon for any felony or other qualified offense that is necessary for the operation of this section; and ... [a] conviction of a felony or other qualified offense necessary to the operation of this section has not been set aside in any post-conviction proceeding." Id. § 775.084(1)(a)(3)-(4). Under Eutsey v. State, 383 So.2d 219 (Fla. 1980), the "no pardon" and "no post-conviction relief" findings are affirmative defenses and need not be proved by the State. Id. at 226.
There is a division of authority on whether it is necessary for the trial court to make the "no pardon" and "no post-conviction relief" findings where, as here, the defendant has not asserted either of those affirmative defenses. Compare Banes v. State, 597 So.2d 975 (Fla. 4th DCA 1992) (question certified); Hodges v. State, 596 So.2d 481 (Fla. 1st DCA 1992) (question certified), review pending, No. 79,728 (Fla. 1992); and Anderson v. State, 592 So.2d 1119 (Fla. 1st DCA 1991) (question certified), review pending, No. 79,535 (Fla. 1992), with Baxter v. State, 599 So.2d 721 (Fla. 2d DCA 1992) (conflict certified), review pending, No. 79,993 (Fla. 1992). See generally Robert R. Bensko, Jr., Florida's Habitual Felony Offender Statute: New Life for an Old Law, Fla.B.J., Oct. 1992, 49, at 51.
Until the conflict is resolved, the better course would be for the trial court to make each of the four findings which are enumerated in subsection 775.084(1)(a), including the "no pardon" and "no post-conviction relief" findings. The findings need only be made on the record and need not be reduced to a written order, although the trial court may enter a written order if it so chooses. See Parker v. State, 546 So.2d 727, 729 (Fla. 1989); Eutsey v. State, 383 So.2d at 226; Tibbetts v. State, 603 So.2d 43, *916 45 (Fla. 4th DCA 1992); Moreno v. State, 550 So.2d 1172 (Fla. 3d DCA 1989).
We find no error in the trial court's evidentiary rulings regarding the restraining order.
For the reasons stated, the conviction for possession of burglary tools is reversed and remanded with directions to enter a judgment of acquittal on that count. The remaining convictions are reversed and the cause remanded for a new trial.
NOTES
[1] In our view the other case principally relied on by the State, Nelson v. State, 395 So.2d 176, 178 (Fla. 1st DCA 1981), has been limited by Lawhorne.
[2] § 843.02, Fla. Stat. (1991).
[3] The question whether the theft and possession of burglary tools convictions were intended to run consecutively or concurrently is moot in view of the reversal of the latter conviction.