643 So.2d 61 (1994)
Robert Earl ROYSTER, Appellant,
v.
STATE of Florida, Appellee.
No. 93-99.
District Court of Appeal of Florida, First District.
September 29, 1994.
*62 Spiro T. Kypreos, Pensacola, for appellant.
Robert A. Butterworth, Atty. Gen. and Bradley R. Bischoff, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
Robert Earl Royster appeals his convictions on the charges of disorderly intoxication, disorderly conduct, escape and resisting arrest without violence. We reverse appellant's conviction for disorderly intoxication. With respect to the remaining three charges, we reverse and remand for a new trial.
Appellant was charged by amended information dated March 24, 1992, with escape, disorderly intoxication and resisting arrest without violence. A trial by jury was held on August 5, 1992. The jury was unable to reach a verdict. A second amended information was filed on August 10, 1992, wherein the charge of disorderly conduct was added to the original charges.
The charges against appellant stem from an incident occurring in the early morning hours of July 23, 1991. Deputy Charles Perry, Escambia County Sheriff's Department, testified that he was on patrol with Reserve Deputy Nanette Aldridge. Perry received a radio dispatch regarding an assault victim at 4406 Chantilly Way, in Pensacola. Upon arriving at the scene, Perry knocked on the door and appellant answered. The deputy asked about the complaint. Appellant was incoherent, and Perry could not understand him. Eventually, the deputy realized that the appellant was saying he had been beaten up. Appellant began using foul language. Appellant smelled of alcohol and appeared intoxicated or "high." Perry did not arrest the appellant and the deputies left the area.
Approximately one hour later Perry and Aldridge returned to the Royster residence as backup unit for Deputy Van Weeks and Lt. Fred Price of the Escambia County Sheriff's Department. Perry noted that the defendant was already handcuffed when they arrived. Reserve Deputy Aldridge testified that when they arrived at 4406 Chantilly Way the first time the defendant was already outside to meet them. Her recollection was that the defendant used foul language, stated that he hoped Perry "got his ass beat," and announced that he did not want the deputies there. The defendant then escorted the deputies to their car saying, "I'll sue you in federal court." Aldridge felt the defendant was intoxicated.
*63 Lt. Fred Price testified that on July 23, 1991, he went to the Royster residence in response to a shooting call. When he arrived he noticed an ambulance, people in the street and yard and "a lot of big commotion." He recalled seeing the defendant "on the front porch, causing a big scene, he was hollering and carrying on." On cross-examination Price testified that an ambulance and patrol cars will draw a crowd and that he could not say whether the people he observed were being drawn by the defendant or the ambulance. He estimated that there were 10-15 people present.
Deputy Van Weeks testified that he and Lt. Price arrived at the Royster residence about the same time. Weeks also testified that he and Price knocked on the door and the defendant and his mother stepped out. Weeks asked who had been shot. The defendant, in very abusive language, informed the officer that no one had been shot, but that was the only way he could get the officers out to his house. Appellant told Van Weeks that someone had beaten him up earlier and complained that the police would not assist him in the matter. Weeks cautioned the defendant that if he did not calm down he would be arrested. The defendant then became "a little louder, cuss words came out more frequently." The defendant seemed to be intoxicated. Weeks felt that the defendant was loud enough to be heard by the neighbors, and then arrested appellant for disorderly intoxication. Weeks recalled that the defendant's mother was present when the arrest was made. Weeks testified that appellant's mother asked him to "get this nigger out of here, I can't do anything with him, something like that." Weeks escorted the defendant to his patrol car and transported him to the jail.
Officer Patricia Scherer testified that she was on duty with Weeks that morning. She stayed in the patrol car but remembered that there was "a lot of commotion in the yard" at the Royster residence. On cross-examination she was questioned as to who was present at the scene. In addition to the defendant and Weeks, she recalled seeing emergency medical technicians and Lt. Price. She could not recall seeing any neighbors coming over or anyone else there.
Weeks testified that upon their arrival at the jail, he exited the vehicle, shut his door, and told appellant to step out and to step inside into the booking area. Weeks stepped back and the defendant got out of the vehicle, stepped around the car door and "took off running ... towards the parking lot." He "ran probably, just a rough estimate, probably 15 feet ... probably five feet past the front bumper of my car." Weeks chased appellant, grabbing him "by the chain that goes between the cuffs." Weeks escorted the defendant back towards the entrance to the booking area and let him go, at which point he "either stumbled, tripped, fell or something." When Weeks picked appellant up, appellant had a small cut on his right cheek. Appellant was taken into the jail to be examined by a nurse and was then transported to the hospital for medical attention.
Patricia Scherer remained in the patrol car when Weeks got out. She testified that the defendant "ran towards the front of the car." She did not see the defendant fall down, but did see him on the ground and being assisted getting up. While she felt he was intoxicated, she also indicated that the defendant was coherent. On cross-examination she acknowledged that her deposition testimony was, "Oh, he was stumbling because he was drunk as a hoot owl." "He was so drunk, he stunk." She further stated that she did not see the defendant physically break away from Weeks. Appellant got no more than five feet in front of the car.
William Sheffer, a local television station engineer, also witnessed the events at the Royster residence. He heard a shooting call on his police scanner and went to the Royster residence. He saw Weeks at the door of the residence. Sheffer also saw a black female come out screaming at Weeks and asking Weeks not to arrest the defendant. On cross-examination, Sheffer testified that when Weeks made contact with the defendant there was no loud voice and that the defendant raised his voice after he was being escorted to the police car. Sheffer further testified that he did not see a crowd of fifteen people at the scene.
*64 Upon denial of defendant's motion for judgment of acquittal, Albertha Royster, appellant's mother, was called as a witness. She testified that when they arrived the police asked in a loud voice "what happened here, anybody got shot here?" Her son came to the door and said he called the police. The police "grabbed him, said you going to jail tonight because you been harassing us." "They handcuffed him and they took him away." She did not hear her son use any profanity; he "didn't say a word because they took him by surprise." Mrs. Royster further testified that she did not tell the police to get her son off the property or say "get this nigger out of here" because her son was not bothering her.
Cedric McPherson was also called as a witness for the defense. He testified that earlier in the evening he had seen someone shoot at the defendant. Later, he saw some boys punching and kicking the defendant near Truman Arms.
Appellant was found guilty on each of the four counts and sentenced to 2 1/2 years for escape, 60 days (concurrent) on the charges of disorderly intoxication and disorderly conduct, and one year (concurrent) on the charge of resisting arrest without violence.
On appeal, appellant argues that: (1) the trial court erred in denying his motion for judgment of acquittal as to each offense charged; (2) the trial court erroneously instructed the jury with respect to the charge of disorderly conduct; (3) the disorderly intoxication and disorderly conduct statutes are unconstitutional as applied to appellant; (4) the trial court abused its discretion in denying appellant's motion for mistrial following officer testimony that appellant's own mother was encouraging officers to remove him from the premises; (5) the trial court erred in instructing the jury that appellant's arrest constituted the lawful execution of a legal duty; (6) the prosecutor's reference to a potential civil action by appellant was made an impermissible feature of the trial; (7) the trial court erred in permitting officer testimony that appellant was arrested in a proper and professional manner; (8) the trial court abused its discretion in denying appellant's motion for mistrial made after the prosecutor commented, during closing argument, that Officer Weeks was a "good cop"; (9) the cumulative effect of trial errors deprived appellant of a fair trial.
Section 856.011, Florida Statutes (1991), provides:
(1) No person in the state shall be intoxicated and endanger the safety of another person or property, and no person in the state shall be intoxicated or drink any alcoholic beverage in a public place or in or upon any public conveyance and cause a public disturbance. (emphasis added).
Thus, under the plain language of the statute, "disorderly intoxication" is defined and proscribed in two distinct ways: (1) where the person is intoxicated and endangers the safety of another person or property; and (2) where the person is intoxicated or drinks alcohol in a public place or on a public conveyance and causes a public disturbance. The amended information under which appellant was tried did not charge appellant with being intoxicated and endangering the safety of other persons. Rather, appellant was charged with being intoxicated in a "public place" and causing a "public disturbance." The trial court charged the jury in accordance with this statutory alternative. The state, therefore, was required to prove that appellant was intoxicated or simply drank an alcoholic beverage in a public place or conveyance and caused a public disturbance. The criminal standard jury instruction for disorderly intoxication defines a "public place" as a "place where the public has a right to be and to go." In the present case, it is undisputed that appellant was arrested on his front porch. While we can find no prior Florida case on point, we are of the view that appellant's front porch cannot be regarded as a "public place" for purposes of the disorderly intoxication statute. The proof presented was therefore insufficient to sustain appellant's conviction for disorderly intoxication. The trial court erred in denying appellant's motion for judgment of acquittal on the charge of disorderly intoxication.
With respect to appellant's three remaining convictions, we find no error in the *65 trial court's denial of appellant's motion for judgment of acquittal. Nonetheless, for the reasons which follow, we find it necessary to reverse and remand for a new trial.
During closing argument, defense counsel argued:
Granted, it's not a wise thing to do to use profanity toward anyone and especially towards law enforcement. But that's another law in our country that we can do that. You can use profanity towards an officer, whether you like it or not. In our First Amendment rights we can do that. Not very wise thing to do.
The prosecutor objected, arguing that you cannot use profanity to a police officer under certain circumstances. The trial judge then instructed the jury:
[I]t is not the law in the State of Florida that you can take and use any profanity or any type words toward an officer under the First Amendment freedom of speech. That's not the law in the State.
* * * * * *
[A] citizen does not have the right to use any profanity in any words under the First Amendment to a police officer. I will instruct the jury that is an incomplete statement of the law, incomplete.
Although defense counsel's statement of the law may not have been entirely accurate, the trial court's instruction was even less accurate. Moreover, it created the appearance that appellant's counsel was attempting to mislead the jury. This instruction, pertinent to appellant's conviction on the charge of disorderly conduct, was erroneous and prejudicial.
On another point, Lieutenant Fred Price was permitted to testify that appellant's "own mother was out in the yard hollering do something with him, get him out of here." Defense counsel interposed a timely hearsay objection and moved for a mistrial. The trial court overruled the objection on the ground that the testimony was relevant to the issue of the illegality of the arrest and not offered for the truth of the matter asserted. To the contrary, such testimony was hearsay and not, as the state argues, admissible under the state of mind exception because the mother's state of mind was not relevant to any issue in the case. We are not able to say, to the exclusion of all reasonable doubt, that admission of the testimony was harmless.
With respect to appellant's conviction for resisting arrest without violence, the trial court erred in instructing the jury that "arresting and taking custody of the defendant does constitute the lawful execution of a legal duty or the execution of a legal process." Such instruction impermissibly took from the jury the issue of the legality of the defendant's arrest. See Starks v. State, 627 So.2d 1194 (Fla. 3d DCA 1993); Hierro v. State, 608 So.2d 912 (Fla. 3d DCA 1992); Jones v. State, 584 So.2d 190 (Fla. 5th DCA 1991). Appellant's counsel, however, failed to object to the instruction. Therefore, this issue is not preserved for appellate review.
We are unable to say that the trial court committed a clear abuse of discretion in permitting questioning regarding a contemplated civil suit by appellant against the county arising out of his arrest. On the other hand, we are inclined to the view that it was error to permit police officers to offer opinion testimony regarding the propriety of appellant's arrest. Such testimony was not relevant to any issue in the case and, given the nature of the case, was prejudicial. We reject the state's argument that this issue was not preserved for appellate review.
Certain of the prosecutor's comments during closing argument are deserving of mention. In closing, the prosecutor again referred to appellant's potential civil lawsuit against the county and argued that the arresting officer was a "good cop." After the "good cop" argument, appellant moved for a mistrial. The trial court denied the motion for mistrial but sustained the objection and gave a curative instruction. While the prosecutor's comments probably would not, without more, justify reversal if the trial were otherwise error-free, the cumulative error presented on this record justifies the conclusion that appellant was deprived of a fair trial. In summary, appellant's conviction for disorderly intoxication is reversed. On remand, the trial court shall enter a judgment *66 of acquittal on the charge of disorderly intoxication. Appellant's convictions for disorderly conduct, escape and resisting arrest without violence are reversed and the case remanded for a new trial.
REVERSED and REMANDED.
MINER, WEBSTER and DAVIS, JJ., concur.