NESBITT, Judge.
Defendant D’Angelo Mitchell appeals his conviction for carrying a concealed firearm and for unlawful possession of a firearm by a convicted felon. We reverse.
Mitchell was a passenger in the back seat of another person’s car; the car stopped, the front seat passenger exited the vehicle, and Mitchell switched to the front seat. The police pulled the ear over and saw a gun protruding from under Mitchell’s seat. Mitchell claimed that it was not his gun and that he had never seen it before.
During direct examination, Mitchell’s counsel asked him whether he had any prior convictions. Mitchell responded that he had eight prior convictions. When defense counsel asked Mitchell if he had pled guilty to those prior convictions, the State objected, and the trial court sustained the objection. Mitchell claims that the trial court’s refusal to permit anticipatory rehabilitation necessitates reversal, and entitles him to a new trial. We agree.
Anticipatory rehabilitation allows counsel to elicit damaging information from his own witness to “soften the blow” or reduce its harmful consequences. See Lawhome v. State, 500 So.2d 519 (Fla.1986). The same two questions are posed here as were presented in Lawhome: (1) whether the attempted questioning as to whether the cases went to trial was proper rehabilitation and (2) whether such rehabilitation should be al *1346 lowed on direct examination in anticipation of impeachment based on the prior convictions. As the court observed in Lawhome, 500 So.2d at 520:
[T]he party presenting testimony may not only bring out impeaching information on direct examination to steal the thunder of the impeachment it is anticipated the other side will elicit on cross, but may attempt to “reduce the harmful consequences” by explaining something about the nature or character of the damaging information — in other words, to rehabilitate the witness before he has been impeached.
Mitchell had the right to “ameliorate” the expected effect of the anticipated evidence of his convictions. Furthermore, where, as here, the critical issue was the veracity of Mitchell’s statement that he did not know a gun was under his seat, we cannot conclude the trial court’s refusal to admit Mitchell’s plea history, was “harmless beyond a reasonable doubt.” See Hierro v. State, 608 So.2d 912, 914 (Fla. 3d DCA 1992).
However, we also want to observe that as was made clear in Lawhome, as well as Hierro, rehabilitation does not come without limits.
It is true that by attempting to rehabilitate a witness by having him testify that past convictions were obtained by pleas of guilty, a party opens the door somewhat to allow the other party to question the witness about the reasons for pleading guilty....
Hierro, 608 So.2d at 913 (citing Lawhorne, 500 So.2d at 523). As both cases note, the extent to which a party “opens the door” will be determined and controlled by the court to prevent the parties from wandering too far afield. See, e.g., Martin v. State, 411 So.2d 987 (Fla. 4th DCA 1982); Sneed v. State, 397 So.2d 931 (Fla. 5th DCA 1981); Leonard v. State, 386 So.2d 51 (Fla. 2d DCA 1980).
Accordingly, we reverse and remand for a new trial.