ROTHENBERG, Judge.
The defendant, Jeffery Jackson, appeals from his conviction and sentence for first degree murder. Based on the cumulative effect of the errors committed during the trial, we reverse and remand for a new trial.
The defendant was charged with the first degree murder of Anthony Brown. At trial, the State’s theory of the case was that Mr. Brown and- the defendant were friends, that the defendant went to Mr. Brown’s home to rob him of his cash and jewelry, and that when Mr. Brown resisted the defendant’s attempt to rob him, the defendant killed Mr. Brown. In contrast, the defendant claimed that he did not go to Mr. Brown’s home to rob him, but instead went there to purchase cocaine, and while there, Mr. Brown made sexual advances towards him. He claimed that when he rebuffed the advances, Mr. Brown became angry and attacked him with a knife. After being attacked, he stabbed Mr. Brown in self-defense.
During its case-in-chief, the State presented the testimony of witnesses who acknowledged that Mr. Brown was a homosexual. In addition, these witnesses portrayed Mr. Brown as a peaceful, friendly man who would invite friends and neighbors over for barbecues and card games, and that as a result of the card games he often had large amounts of cash at home. These witnesses also testified that Mr. Brown was not a drug dealer/
Following the State’s presentation of its case, the defendant testified that Mr. Brown was a drug dealer who had sold drugs to him on numerous occasions. On one occasion, Mr. Brown, who was a homosexual, told the defendant that if he would expose his penis, he would give him more drugs. The defendant agreed, but when Mr. Brown attempted to grab his penis, the defendant left. The defendant claimed that on the evening of the stabbing, he had hoped to exchange a gold bracelet for crack cocaine since he did not have any money. Mr. Brown accepted the gold bracelet and allowed the defendant to smoke the cocaine in his bedroom. After smoking the cocaine, Mr. Brown gave him more crack cocaine, but the defendant decided to leave when Mr. Brown began fondling- himself. This angered Mr. Brown, who stated, “I been giving you dope this time, last time, and it’s time for you to do something for me.” When the defendant still attempted to leave, Mr. Brown came at him with a knife, cutting the defendant’s hand as he tried to defend himself. The defendant then ran to the kitchen and grabbed two knives, at which point, both men struggled, and eventually Mr. Brown fell to the floor. The defendant claims that because the doors were locked, he began to search Mr. Brown’s bedroom for the keys, finding in addition to the keys, money and crack cocaine, which he took with him when he left the house. When the defendant’s father saw that the defendant had been injured and the defendant told him that he had been robbed, the defendant’s father called the police. When questioned by the police, the defendant initially told the police the same story that he had told his father, but after realizing that the police did not believe him, he told them that he had stabbed Mr. *482 Brown in self-defense. The defendant testified that he had initially lied to his father and the police because he thought that the police would not believe him due to his extensive criminal history.
During his direct examination, the defendant admitted that he has thirteen prior felony convictions, and that eight of the thirteen felonies are for grand theft. The State objected to the defendant’s testimony regarding the nature of his prior convictions on relevancy grounds, and the trial court sustained the objection. The State, however, withdrew its objection to the testimony and the jury was permitted to consider it. The defense then asked the defendant whether any of his prior grand theft convictions involved the use of a weapon and whether he had ever threatened or harmed anyone during the commission of the grand thefts. The State objected to these questions, the trial court sustained the objection, and the defendant was not permitted to answer these questions.
Pursuant to the trial court’s ruling on the State’s motion in limine, the defense was precluded from calling witnesses, other than the defendant, who would testify that Mr. Brown was a drug dealer. The defense’s proffer reflected that two witnesses would have testified that Mr. Brown was a drug dealer who sold drugs from his home.
During closing argument, the State argued as follows:
[H]e wants you to believe that the only way he knew Anthony was as his drug dealer. There is no evidence whatsoever, other than what the defendant said in this case, and I submit to you everything that he tells you is unbelievable.... There is no evidence, other than what he said, that Anthony Brown ever sold this defendant any drugs.
In charging the jury on the laws applicable to the case, the trial court gave the following instruction on the justifiable use of deadly force in self-defense:
A person is justified in using force likely to cause death or great bodily harm if he reasonably believes that such force is necessary to prevent:
Imminent death or great bodily harm to himself, or the imminent commission of aggravated battery against himself.
[[Image here]]
However, the use of force likely to cause death or great bodily harm is not justifiable if you find:
1. Jeffery Jackson was attempting to commit, or committing a murder and/or robbery;....
The jury found the defendant guilty of first degree murder, the trial court adjudicated the defendant guilty, and he was sentenced to life in prison.
In this appeal, the defendant contends that the trial court erred in not permitting him to testify as to the nature and circumstances surrounding his thirteen prior felony convictions where his credibility was a material issue at trial. We agree.
In Lawhome v. State, 500 So.2d 519 (Fla.1986), the Florida Supreme Court explained:
[WJhile the impeaching party may only inquire as to the existence of convictions and their number (or, if the matter be denied, may show the convictions by documentary evidence) the party presenting the testimony of the witness may delve into the nature or circumstances of the convictions for the purpose of rehabilitating the witness by attempting to diminish the effect of the disclosures.
Id. at 522; see also McArthur v. Cook, 99 So.2d 565, 567 (Fla.1957)(“If the witness so *483 desires he may of his own volition state the nature of the crime and offer any relevant testimony that would eliminate any adverse implications; for example, the fact that he had in the meantime been fully pardoned or that the crime was a minor one and occurred many years before.”); Williams v. State, 730 So.2d 777, 778 (Fla. 3d DCA 1999)(holding that on direct examination of defendant, he is entitled to explain the nature and circumstances of his prior conviction in order to rehabilitate himself prior to being impeached by the State during cross-examination).
In the present case, during the defendant’s direct examination, he testified that he has thirteen prior convictions, and that he initially lied to the police because he did not think that they would believe him due to these convictions. The defendant’s defense to the charges was self-defense and his credibility was a critical aspect of the case. The jury was specifically instructed that in weighing the testimony of a witness, one of the factors they should consider was whether the witness had ever been convicted of a crime. Thus, the nature of the defendant’s prior felony convictions, which would have included the fact that the defendant had never used a weapon, threatened, or harmed anyone during the commission of these felonies, was relevant, and therefore, the trial court erred in precluding the defendant’s testimony. See Lawhorne, 500 So.2d at 522; Williams, 730 So.2d at 779 (holding that the trial court’s error in not allowing defendant to testify on direct examination as to nature and circumstances of prior convictions was not harmless error where “credibility of the defendant” was “critical to the deliberations of the jury”).
The defendant also contends that the trial court abused its discretion in precluding him from calling witnesses who would have testified that Mr. Brown was a drug dealer where this evidence would have corroborated his claim that he went to Mr. Brown’s home to purchase cocaine, not to rob him, and where the trial court permitted the State to call witnesses who testified that Mr. Brown was not a drug dealer. We agree.
We are mindful that pursuant to section 90.404(1), Florida Statutes (2004), evidence of a victim’s character is “inadmissible to prove action in conformity with it on a particular occasion.” In the instant case, however, the defense did not seek to introduce evidence that Mr. Brown was a drug dealer as an attack upon his character. The defense sought to elicit this testimony to corroborate the defendant’s testimony that he did not go to Mr. Brown’s home to rob him, but instead went there to purchase drugs, and while he was there, Mr. Brown attacked him after he rebuffed his sexual advances. See Villella v. State, 833 So.2d 192, 196-97 (Fla. 5th DCA 2002)(holding that it was error to exclude corroborative evidence where evidence was vital to defendant’s defense).
Further, even if the evidence was inadmissible pursuant to section 90.404(1), we conclude that because the State opened the door during its case-in-chief by calling witnesses who testified that Mr. Brown was not a drug dealer, it was error to preclude the defense from eliciting testimony to the contrary. See Barone v. State, 841 So.2d 653, 655 n. 2 (Fla. 3d DCA 2003)(“The ‘opening the door’ concept permits the admission of otherwise inadmissible evidence to ‘qualify, explain or limit’ previously admitted evidence.”)(quoting Ramirez v. State, 739 So.2d 568, 579 (Fla.1999)). Moreover, this error was further compounded when the State argued during closing argument that “[tjhere is no evidence, other than what he said, that Anthony Brown ever sold this defendant any drugs,” as this statement unfairly left the jury with the impression that the defen *484 dant was unable to produce a single witness who could confirm that Mr. Brown was a drug dealer.
Thus, we cannot say that precluding the defendant from introducing this relevant evidence was harmless where (1) the defendant’s defense in this case was self-defense and that defense was predicated upon the defendant’s claim that he went to Mr. Brown’s house to purchase cocaine from him, not to murder or rob him; (2) the defendant’s credibility, which was weakened by the number of his prior convictions, was further weakened by his inability to present testimony regarding the nature of those felonies; (3) the State was permitted to introduce evidence that Mr. Brown was not a drug dealer; and (4) the State in its closing argument inferred that the defendant could not produce the very evidence that the trial court precluded him from introducing.
The final issue raised on appeal is that the forcible felony exception to the self-defense instruction given by the trial court was error with regard to the first degree premeditated murder as this portion of the instruction may not be given absent an independent forcible felony. The defense properly concedes that it was not error to provide this instruction with regard to first degree felony murder as the underlying felony was robbery, a forcible felony. We decline to address this issue in light of our conclusion that the cumulative effect of the errors previously addressed requires a new trial. We direct the trial court, however, to consider our recent opinion in Martinez v. State, 933 So.2d 1155 (Fla. 3d DCA 2006), regarding when the jury may be properly instructed on the forcible felony exception to self-defense.
Reversed and remanded for a new trial.